**WGBH EDUCATIONAL FOUNDATION, INC., Plaintiff,**

v.

**PENTHOUSE INTERNATIONAL LTD. and Nova Publications, Ltd., Defendants.**

No. 78 Civ. 2296 (RLC).

United States District Court, S. D. New York.

July 24, 1978.

Darby & Darby, P.C., New York City, by William F. Dudine, Jr., and David R. Francescani, New York City, for plaintiff; Csaplar & Bok, Boston, Mass., Peter W. Bradbury, Arnold P. Messing and Marsha C. Macey, Boston, Mass., of counsel.

Watson, Leavenworth, Kelton & Taggart, New York City, by Stevan J. Bosses and Thomas V. Heyman, New York City, for defendants; Albert Robin, New York City, of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

Plaintiff, WGBH Educational Foundation, Inc. ("WGBH"), is a non-profit educational corporation operating several public television ("T.V.") and radio stations in the Commonwealth of Massachusetts. One of the T.V. shows it produces is Nova—a series of programs each of which is devoted to one aspect of science. The Nova series is designed to reach the general public. It attempts, and apparently has thus far succeeded, to treat scientific issues in a serious, informative and illuminating manner for its viewing audience. Because of the quality of Nova's productions, WGBH has been able to enlist the support and assistance of some of the most prestigious figures in the scientific community in its effort to present through Nova a faithful, albeit entertaining, picture of some of the scientific realities in our environment to a public for which these matters remain largely mysterious.

The Nova series was initiated in 1972, and thus far some ninety programs have been produced. The name Nova was chosen on November 9, 1973. The first Nova program was shown generally in March, 1974, although there had been an earlier showing on February 21 for a special audience. In connection with the T.V. series, and as part of its promotional effort to popularize the program, WGBH periodically publishes and distributes a collection of press reports on Nova in magazine form. It also sells transcripts of its programs. In addition, WGBH, together with Time Life Films, produces the programs in an audio-visual format for distribution to schools, and those programs have become a best selling series for Time Life Films.

Defendants, Penthouse International, Ltd. ("Penthouse Ltd."), and Nova Publications, Ltd. ("Nova Publications"), a wholly-

owned subsidiary of Penthouse, plan to publish a Nova magazine, the publication of which plaintiff now seeks to enjoin. This proposed magazine is the brainchild of Robert Guccione, publisher of Penthouse, Viva and Forum magazines. The first two of those periodicals publish articles dealing explicitly with sex and are generously larded with photographs of the female nude. Forum, on the other hand, deals with a variety of subjects "most of which relate to some aspect of human sexual behavior" and such other topics as drugs, alcoholism and weight control.

A magazine entitled Nova had been published and distributed in Great Britain before WGBH adopted the same name for its T.V. series, but that publication has since ceased all operations. Guccione was familiar with that English magazine and, after its demise, he contemplated issuing his own magazine under that same name. His plans did not concretize, however, until a few years ago when he began to take steps to bring this idea to fruition. A trademark search was conducted and Guccione's lawyers advised him that no Nova mark had been registered appurtenant to any magazine in the United States patent office. Guccione then took the necessary, preliminary steps to the actual start-up of his new publication endeavor, *i.e.,* organizing a staff, soliciting articles and seeking advertising. The plans for the magazine call for it to devote approximately ⅕ of its coverage to each of the following subjects: science fact, science fiction, science fantasy, the occult (paranormal psychology) and UFOs.

Before there had been any appreciable pre-publication expenditures or financial commitments, Guccione was made aware of plaintiff's existence and that it would contest his right to use Nova as the name for the new publication. Nonetheless, Guccione persisted in his preparations for publication of the new periodical, then scheduled for publication in October, 1978. At trial, estimates of what defendants stand to lose if publication is enjoined ranged between 2 and 15 million dollars. There was also testimony that the logo was such that if defendants were enjoined, they could not adopt a new name and meet the October publication deadline.

Defendant Nova Publications has applied to the United States patent office for registration of the mark Nova in connection with the proposed magazine. Plaintiff did not oppose that registration. Defendants have also employed the services of Robert Sorenson & Associates, a marketing consulting company, to undertake a survey to determine the likelihood of confusion between plaintiff's Nova series and defendants' proposed Nova magazine. Dr. Sorenson concluded that there was no likelihood that the public would consider the proposed Nova magazine as emanating from the plaintiff.

WGBH has thus far received over 11 million dollars in corporate and foundation funding to support its Nova series. Plaintiff contends that such funding and the prestige it enjoys in the scientific community will be imperilled unless the defendants' use of the name Nova on its proposed publication is enjoined. Consequently, it asks that the court issue such an injunction.

*Determination*

There is no question that plaintiff (as between it and defendants) is the prior user of the mark Nova, and, under ordinary circumstances, by virtue of such prior use, plaintiff would be entitled to the protection it seeks. *See, e. g., King Research, Inc. v. Shulton, Inc.,* 454 F.2d 66, 68–69 (2d Cir. 1972); *Polaroid Corp. v. Polarad Electronics Corp.,* 287 F.2d 492 (2d Cir.), *cert. denied,* 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961). The variables that must be considered in determining whether the prior owner was entitled to relief have been specified as follows:

"the strength of [the] mark, the degree of similarity between the two marks, the

proximity of the products, the likelihood that the prior owner will bridge the gap, actual confusion, and the reciprocal of defendant's good faith in adopting its own mark, the quality of defendant's product and the sophistication of the buyers."

*Polaroid Corp., Inc. v. Polarad Electronics Corp., supra*, 287 F.2d at 495. It was made clear that even this listing was only a partial one since other factors may have to be taken into account. *Ibid.* Moreover, it has been the law of this circuit, at least since 1928, with *Yale Electric Corp. v. Robertson*, 26 F.2d 972 (2d Cir. 1928) (flashlights v. locks), through *Scarves By Vera, Inc. v. Todo Imports, Ltd.*, 544 F.2d 1167 (2d Cir. 1976) (scarves v. fragrances), that a trademark owner has a right to protection on related, non-competing goods. And when such claims of infringement have been rejected, the allowed use of the mark on non-competing goods has been precisely defined. *Scarves By Vera, Inc. v. Todo Imports, Ltd., supra*, 544 F.2d at 1172.

■ The mark Nova is arbitrary, fanciful and non-descriptive as applied to a T.V. science program or publication and, therefore, a strong mark entitled to protection. *See Mushroom Makers, Inc. v. R. G. Barry Corp.*, 441 F.Supp. 1220, 1226 n. 25 (S.D.N.Y.1977) (Weinfeld, J.), *aff'd*, 580 F.2d 44 (2d Cir. 1978). In addition, there is no question in my mind that a magazine such as the one proposed by defendants is so closely connected to the present medium of plaintiff's primary operations that even absent any publication activity by WGBH, its right to be protected against the use of its mark on a periodical by a late-comer would be difficult to deny. However, plaintiff here is also operating to some degree in the magazine publication field already and may expand those operations in the near future. It distributes a promotional periodical called Nova about its series and, together with Time Life Films, distributes its programs in audio-visual form to schools. Time Life Films is also interested in publishing a periodical under the Nova name which would be designed along similar lines to the Nova program and would be aimed at a similar audience.

■ Plaintiff has failed to register Nova with the trademark office, and indeed has even failed to oppose defendant Nova Publication's application for registration, though that application was published for opposition on March 21, 1978, at about the time plaintiff was notified by telephone of defendants' plans and had referred the matter to counsel for advice and action. It would have been preferable, of course, for plaintiff to have registered Nova as its mark, and for WBGH to have opposed Nova Publication's application for registration. That certainly would have been added evidence of plaintiff's intent to assert its right to bar late-comers from using the Nova name. However, defendants can gain nothing by plaintiff's failure to register the mark because it is conceded that the former are late-comers vis-a-vis plaintiff, and, moreover, had knowledge of plaintiff's prior claim at least since March, 1978. Usage, not registration, confers the right to a trademark. *See, e. g., G. Leblanc Corp. v. H. & A. Selmer, Inc.*, 310 F.2d 449, 456 (2d Cir. 1962), *cert. denied*, 373 U.S. 910, 83 S.Ct. 1299, 10 L.Ed.2d 412 (1963); *Rare Earth, Inc. v. Hoorelbeke*, 401 F.Supp. 26, 36 n. 19 (S.D.N.Y.1975) (Cannella, J.). All registration does is to afford the registrant prima facie evidence of ownership of the mark; it confers no greater rights than those possessed at common law. *See Tuvache, Inc. v. Emilio Pucci Perfumes International, Inc.*, 152 U.S.P.Q. 574, 575 (S.D.N.Y.1967) (Mansfield, J.).

Defendants suggest that plaintiff's failure to oppose Nova Publication's application in the patent office has deprived the court of the expertise of that office in connection with this trial. Since defendants are not claiming prior use, nor denying plaintiff's right of ownership of the mark, but instead are basing their defense in large part on the fact that their Nova magazine would func-

tion in a field unrelated to that in which plaintiff is now operating, and that there would be no likelihood of confusion as to the source of the new magazine, it is difficult to envision what expertise the patent office could bring to bear in re the issues of this case. *See ibid.* In addition, plaintiff's failure to register Nova as its mark or oppose Nova Publication's application for registration has not been shown to have prejudiced the defendants in any way since the latter concededly had actual notice of plaintiff's claims before they launched into their full-scale, prepublication activities. Indeed, defendants could have instituted an action of their own seeking a declaration of their rights with respect to the Nova mark. They chose not to do so, however, confident that the fields were sufficiently separated so that no infringement claim would lie.

Turning to the issue of Dr. Sorenson's survey, I find it superficially troublesome. As defendants correctly point out, plaintiff could have aided the court in evaluating this survey by producing its own marketing expert, but it did not do so. Dr. Sorenson concluded from his survey that there exists no likelihood of confusion between plaintiff's Nova T.V. series and defendants' proposed Nova periodical. That survey, however, has several conceded infirmities. First, there is the problem of the universe to be surveyed. Guccione stated that the anticipated audience for his publication is the 18–34 year olds. Plaintiff's audience, on the other hand, is flat, that is, it contains people of all ages interested in improving their knowledge of science as well as those knowledgeable people who like to see T.V. programs that deal seriously and intelligently with scientific matters. Plaintiff's audience cannot be segregated by age, or any other specific requirement customarily used by a marketing analyst in establishing the parameters of the universe to be tested. As Dr. Sorenson stated, any limitation of the universe surveyed would have been subject to criticism. Thus, he chose twenty metropolitan areas and made no effort to be selective as to age or scientific interest

of those surveyed. I am certain that the universe has to be more limited than the one surveyed, but I cannot suggest any better alternative than the one chosen. Accordingly, it will be assumed that the sample chosen by Dr. Sorenson is proper. Nonetheless, the disparity between the universe utilized by Dr. Sorenson in conducting his survey and some optimal universe of people to whom such a survey should be directed reduces the evidentiary weight to be accorded its findings.

■ Furthermore, it seems to me that to ask what the "word" Nova means rather than what the "name" Nova means seriously undercuts whatever validity the survey might otherwise have. Directing the question to the "name" Nova rather than to the "word" Nova would be more likely to focus attention on plaintiff's program. Using the term "word" diffuses that focus. Dr. Sorenson gave a reasonable explanation for his choice, but the purpose of the testing was to determine whether the name Nova for defendants' proposed magazine devoted to science and pseudo-science was likely to be confused with or associated with a Nova T.V. program devoted to a responsible discussion of scientific facts. Moreover, the question about the magazine (who will edit or endorse it rather than publish it) also misfired. Dr. Sorenson again had cogent reasons for framing the questions as he did, but I am not persuaded that the abstract results shown can be said to evidence reliably the unlikeliness of confusion as to the source of the new magazine.

■ The standard for the right to a preliminary injunction is a clear showing of "either (1) probable success on the merits *and* possible irreparable injury, *or* (2) sufficiently serious questions going to the merits to make them a fair ground for litigation *and* a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Sonesta International Hotels Corp. v. Wellington Associates*, 483 F.2d 247, 250 (2d Cir. 1973) (emphasis in origi-

nal). And after *Triebwasser & Katz v. American Telephone & Telegraph Co.*, 535 F.2d 1356, 1359 (2d Cir. 1976), even under the serious questions prong of the preliminary injunction test, possible irreparable injury must be shown.

Plaintiff has clearly established its prior right to the use of the mark Nova. Plaintiff has also established its own reputation for high quality and intellectual integrity in re its presentation of science issues on its Nova program. The defendants propose to publish a magazine targeted to much of the same audience that reads Penthouse, Viva and Forum. These magazines cater to their audiences' desire for titillation. While defendants emphasize the high quality of their product, that is, the magazine will be well packaged, it is clear that titillation of its readers will be part of the magazine's aim, since ⅗ of it is being devoted to science fantasy, the occult and UFOs. The publication certainly poses a threat to plaintiff's image of integrity and seriousness, and there is sufficient basis for plaintiff to be concerned that its Nova operation may lose both its funding and its audience. There would be a likelihood of confusion as to source if defendants were allowed to proceed with their plans. Thus, the possibility of irreparable injury has been established.

A great deal of defendants' testimony, on the other hand, was devoted to a showing of hardship in re their projected losses of vast sums of money if publication of Nova is enjoined. However, that possibility of loss does not compare with plaintiff's possible hardship if publication is not halted. Defendants have placed themselves in their present predicament by choosing to go full steam ahead with their project *after* notice of plaintiff's claims. In addition, of all the names available to defendants, it is inconceivable that they could not have chosen a name other than Nova so that no threat to plaintiff would be posed. Finally, if the New York Times item is correct,[1] defendants' statements at the trial that they could not proceed with their proposed publication schedule for October if a name change were ordered, but would instead have to start all over again, was merely designed to evidence hardship for purposes of this litigation. At any rate, the real hardships that must be weighed are those which are unavoidable by either side. Clearly from that perspective, the balance tips in plaintiff's favor.

Accordingly, the motion for preliminary injunction is granted and defendant Nova Publications is further ordered to withdraw its application for registration of the Nova mark with the patent office.

IT IS SO ORDERED. Settle order on or before July 28 next.

---

1. The New York Times reported that in light of this court's announcement prior to the filing of this opinion that defendants' use of Nova would be enjoined, defendants had announced that they would proceed with publication under a new name—Omni. N.Y. Times, July 13, 1978, § D (Business Day), at 14.