The KINGSMEN, an unincorporated business association consisting of Lynn Easton, Michael Mitchell, Norman Sundholm, Richard Peterson, and Barry R. Curtis, Plaintiffs,

v.

K–TEL INTERNATIONAL LTD., K-Tel International, Inc., S.J. Productions, Inc., Stanley Shulman, Dominion Music Corporation, ERA Records Inc., Key Seven Music, Inc., Defendants.

No. 82 CIV 7835 (LBS).

United States District Court, S.D. New York.

Jan. 4, 1983.

Felfe & Lynch, Richard E. Bennett, New York City, for plaintiffs.

Robert W. Cinque, P.C., New York City, for defendants.

### OPINION

SAND, District Judge.

The plaintiffs in this action are a group of musicians who claim ownership of the name "The Kingsmen," a popular band of the 1960's. They seek to restrain the defendants, several music production and record companies, from selling or distributing a long-playing album entitled "60's Dance Party," which contains a selection that purports to be a "re-recording" by the original Kingsmen of probably their most popular hit, "Louie, Louie." The parties appeared before the Court on December 16, 1982 on this motion for preliminary relief and have subsequently filed exhibits and supplementary affidavits. On the basis of the papers, affidavits, and exhibits filed, the following constitutes our findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a).

### FACTS

Lynn Easton, Michael Mitchell, Norman Sundholm, Richard Peterson and Barry Curtis, the plaintiffs, claim that they comprise a rock and roll band known as The Kingsmen. The original Kingsmen were formed in 1962. While the members of the band were still in high school, they recorded a demonstration tape of a song entitled "Louie, Louie." The lead vocalist on that recording was Jack Ely who, along with Easton, was an original member of the group.

Ely left the group in 1964 after his recording of Louie, Louie but before it became popular on the record charts. In 1964, Louie, Louie became the second best selling record in the United States, and The Kingsmen were off to a successful music career.

They recorded a number of albums after their initial success with Louie, Louie, and made numerous concert tours and television appearances. The five named plaintiffs comprised The Kingsmen during this period. Although Ely had originally recorded Louie, Louie, he did not tour with the band, did not perform on their subsequent albums, and did not participate in any fashion with the other members of the band after his 1964 departure. The Kingsmen ceased performing and disbanded in 1967 after three years of relative success.

In 1976, after nearly a decade in which no member of the group performed as The Kingsmen, S.J. Productions, one of the defendants in this action, communicated with Easton and Ely and made a proposal to "re-record" songs originally performed by The Kingsmen. These recordings were to be included on records produced by the defendant highlighting the most popular dance songs of the 1960's. Easton recorded a version of the song "Jolly Green Giant," The Kingsmen's second most popular hit, and a song on which he had been the original lead vocalist. Ely recorded Louie, Louie. In neither case did the original members of The Kingsmen or any of the plaintiffs herein participate in the recording sessions (except for Easton and Ely).[1]

Defendants contend that both Ely and Easton represented at the time they entered into the contracts with S.J. Productions that they were authorized and entitled to use the name Kingsmen with regard to their individual performances. Affidavit of Stanley J. Shulman ("Shulman Affidavit"), ¶ 4. The contracts themselves do not fully support this contention. Easton's contract does indeed describe him as "Lynn Easton, a/k/a Kingsmen," and it is arguable that this constitutes an effort on his part to grant the right to defendants to use the name The Kingsmen in the marketing of

his recording of "Jolly Green Giant." Shulman Affidavit, Ex. A. Ely's contract, by contrast, makes no mention of the name Kingsmen. Affidavit of Robert W. Cinque, Ex. B. There are no other affidavits or evidence suggesting that Ely authorized the use of the name Kingsmen. In the absence of any contractual representations to the contrary, and when viewed in contrast to the Easton contract, we conclude that it is likely that Ely made no representations that he was authorized to use the name Kingsmen.[2]

Ely's most recent recording of Louie, Louie now appears on defendant ERA Records, Inc.'s "60's Dance Party" album, which was released in October, 1982. This record contains songs identified with a number of groups popular during the 1960's. The title "Louie, Louie ... The Kingsmen" appears in bold black letters on the back of the album cover. In small print below the listing of the contents of the album is the notation, "These selections are re-recordings by the original artists."

## DISCUSSION

The plaintiffs seek to enjoin the defendants from representing that the version of Louie, Louie appearing on the 60's Dance Party album is recorded by the group known to the public as The Kingsmen. They point out that none of the other members of the band that toured and recorded as The Kingsmen between 1964 and 1967 participated with Mr. Ely in this recording of Louie, Louie. Even though Ely was the lead vocalist on the original recording of the song, plaintiffs assert that the use of the name Kingsmen, together with the notation that the song is a "re-recording by the original artists," creates the false impression to consumers that they are getting a recording of Louie, Louie as performed by those five persons associated by the con-

---

1. It appears from the papers presented that plaintiffs Peterson and Curtis were not original members of the Kingsmen, but replaced Gary Abbott and Don Gallucci at some point prior to the time the band became popular and signed their first recording contracts. See Affidavit of Stanley J. Shulman, ¶ 4.

2. The parties have advised the Court that they do not seek and believe there to be no need for an evidentiary hearing other than the submission of the affidavits and other exhibits.

sumer with the band The Kingsmen. Instead, plaintiffs argue, they are receiving a recording by Mr. Ely, the lead vocalist on Louie, Louie, in conjunction with musicians who have no relation whatsoever with The Kingsmen.

The defendants argue that Mr. Ely has as great a right as anyone else associated with The Kingsmen at any point in its existence to use the name Kingsmen, and that they are not, therefore, infringing any type of statutory or common law trademark. Moreover, defendants suggest that Mr. Ely has every right to record Louie, Louie under the name The Kingsmen, given the undisputed fact that he was the lead singer on the original version. Finally, defendants argue that by ceasing all recording and touring in 1967, the plaintiffs long since abandoned any protection in the name Kingsmen to the public domain.

Plaintiffs assert protection for the name "Kingsmen" under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), the federal common law of misappropriation and unfair competition, and Sections 368–d and 133 of New York General Business Law.

Section 43(a) of the Lanham Act provides, in part:

> Any person who shall . . . use in connection with any goods or services, or any container or containers for goods, a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same . . . shall be liable to a civil action by . . . any person who believes that he is or likely to be damaged by the use of any such false description or representation.

15 U.S.C. § 1125(a). The statute has been broadly construed, *Warner Brothers Inc. v. Gay Toys, Inc.,* 658 F.2d 76 (2d Cir.1981); *Geisel v. Poynter Products, Inc.,* 283 F.Supp. 261, 267 (S.D.N.Y.1968), and has been applied to protect the name of popular musical recording groups, *see, e.g., Noone, p/k/a Herman of Herman's Hermits v. Banner Talent Associates, Inc.,* 398 F.Supp. 260 (S.D.N.Y.1975); *Rare Earth, Inc. v. Hoorelbeke,* 401 F.Supp. 26 (S.D.N.Y.1975).

Section 43(a) provides relief against the type of unfair competition analogous to the misappropriation of trade names. *Noone v. Banner Talent Associates,* 398 F.Supp. at 263. It protects against the use of a false description or designation of origin. *Rare Earth, Inc. v. Hoorelbeke,* 401 F.Supp. at 38. Moreover, it is settled law that a trademark such as Kingsmen need not be registered. *National Lampoon, Inc. v. American Broadcasting Cos.,* 376 F.Supp. 733, 747 (S.D.N.Y.), *aff'd,* 497 F.2d 1343 (2d Cir.1974); *Rare Earth, Inc. v. Hoorelbeke,* 401 F.Supp. at 37 n. 19. "Usage, not registration, confers the right to a trademark." *WGBH Educational Foundation, Inc. v. Penthouse International Ltd.,* 453 F.Supp. 1347, 1350 (S.D.N.Y.1978), *aff'd mem.,* 598 F.2d 610 (2d Cir.1979). The essence of a complaint under the Lanham Act is an allegation that the consuming public is being deceived as to the origin of the product, which may arise from a misleading representation that a product was produced, manufactured or authorized by a particular person. *See Rare Earth, Inc. v. Hoorelbeke,* 401 F.Supp. at 38 (citations omitted).

To obtain preliminary injunctive relief under the statute, the plaintiff must make a clear showing of probable success on the merits, and the likelihood of irreparable harm in the absence of such relief. *Sonesta International Hotels Corp. v. Wellington Associates,* 483 F.2d 247, 250 (2d Cir.1973). To show probability of success on the merits in the context of a Section 43(a) suit under the Lanham Act, the plaintiff need only show the likelihood that consumers will be deceived by the actions of the defendant. *Warner Brothers Inc. v. Gay Toys, Inc.,* 658 F.2d at 79; *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.,* 604 F.2d 200 (2d Cir.1979). Actual confusion need not be proved on a motion for preliminary relief. *DC Comics, Inc. v. Powers,* 465 F.Supp. 843, 848 (S.D.N.Y. 1978).

It is clear that the plaintiffs meet the requirements of standing, probable success on the merits, and likelihood of irrepa-

rable harm necessary to bring suit for preliminary relief under the Lanham Act. Throughout the entire period from 1964 through 1967, when The Kingsmen were at the height of their popularity, these five plaintiffs toured and recorded as The Kingsmen and were known to the public as The Kingsmen. Plaintiffs have submitted numerous newspaper clippings from this period that identify these plaintiffs both pictorially and by caption with the group The Kingsmen. See Plaintiffs' Exhibits 15, 18–20, 22–23. None of these pictures shows or refers to Mr. Ely as a member of the group. More importantly, it is these five plaintiffs that contracted with Jerden Music, Inc. and Scepter Records, Inc. under the name The Kingsmen for royalties from the sale of original recordings of The Kingsmen, including royalties from the sale of the original recording of Louie, Louie. Supplemental Affidavit of Charles Rubin, Ex. 6, 7. These plaintiffs continue to this day to receive royalties from the sale of compositions recorded by the Kingsmen in the 1960's. Supplemental Affidavit of Charles Rubin, ¶ 4, Ex. 8; Affidavit of Charles Rubin, Exhibit 1.

Moreover, having listened to the recordings by The Kingsmen submitted as exhibits to the Court, including the original recording of Louie, Louie, we stress the ensemble nature of The Kingsmen's music. Although the listener can discern the lead singer from the background vocals and music on a number of Kingsmen songs, the group's "sound" is clearly a collective one. No one member of the group can be singled out as representing the essence of The Kingsmen's performing style. Given the evidence referred to above and the nature of The Kingsmen's recordings to which we have listened, we find as a fact for purposes of this preliminary proceeding that the five plaintiffs herein constitute the band known to the public as The Kingsmen and therefore have standing to sue under the Lanham Act.

Plaintiffs have also made the necessary showing of the likelihood of irreparable harm. Plaintiffs have submitted a number of record albums that are collections of popular dance music of the 1960's. These albums appear to compete directly with the "60's Dance Party" album produced by the defendants. One such album is entitled "Original Rock N' Roll Hits of the 60's" and contains the *original* recording of Louie, Louie by The Kingsmen. Plaintiff's Exhibit 2. Another is entitled "Oldies But Goodies, Original Recordings of the Greatest Rock N' Roll Hits of All Time." Volume 11 of the series also contains the original recording of Louie, Louie. Plaintiffs' Ex. 26. The plaintiffs have authorized the use of Louie, Louie on these albums and receive royalties from their sale. Supplemental Affidavit of Charles Rubin, ¶ 4 and Ex. 8. It is clear from these facts that the defendants' record directly competes with original recordings by The Kingsmen for which plaintiffs continue to receive royalties and that preliminary injunctive relief is therefore appropriate.

There is also little question that defendants' labelling of its 60's Dance Party album is likely to cause confusion in the mind of the public with respect to the origin of the album's contents. The clear import of the notation "Re-recordings by the original artists" is that those persons known in the public consciousness as The Kingsmen assembled in a studio to re-record Louie, Louie—an event that all parties agree did not occur. Finally, there is little doubt that this confusion will cause financial harm to the plaintiffs. The plaintiffs continue to receive royalties from the sale of albums containing Louie, Louie. Every time a consumer purchases one of defendants' records, thinking he is getting a recording of Louie, Louie by The Kingsmen, the royalties owed the plaintiffs are reduced.

For all these reasons, we find that the plaintiffs have established their right to assert protection for the name Kingsmen. We also find that plaintiffs have shown a likelihood of confusion on the part of consumers that purchase defendants' album and the danger that plaintiffs will suffer economic damages in the absence of injunctive relief. *See Eden Toys, Inc. v. Florelee Undergarment Co.,* 526 F.Supp. 1187, 1193

(S.D.N.Y.1981) ("The crucial [standing] question is whether the prospective plaintiff has a reasonable interest that requires protection from the defendant's false representations.") (citation omitted). Defendants should therefore be enjoined from representing on their album, "60's Dance Party," that "Louie, Louie" was "rerecorded" by the original Kingsmen.

■ Defendants argue vigorously that the fact that the five plaintiffs herein ceased recording and disbanded in 1967 constitutes abandonment of any interest in the name Kingsmen under the Lanham Act. Section 45 of the Lanham Act provides, in relevant part:

A mark shall be deemed to be "abandoned"—

(a) When its use has been discontinued with intent not to resume. Intent not to resume may be inferred from circumstances. Nonuse for two consecutive years shall be prima facie abandonment.

15 U.S.C. § 1127. The Lanham Act thus requires two elements: non-use and an intent not to resume use. *Saratoga Vichy Spring Co. v. Lehman,* 625 F.2d 1037, 1043 (2d Cir.1980). The Second Circuit has held that the prima facie abandonment provided under the Lanham Act after two years of non-use is merely a rebuttable presumption of abandonment. *Id.* at 1044.

We find that defendants have failed to show either non-use or intent to abandon. Even though plaintiffs disbanded their group in 1967 and ceased recording new material, there is no evidence suggesting that they failed to use the name Kingsmen during the period from 1967 to the present to promote their previously recorded albums. Moreover, the fact that these individuals continue to receive royalties for Kingsmen recordings flies in the face of any suggestion of intent to abandon use of the name Kingsmen. These plaintiffs have no more abandoned their right to protect the name of Kingsmen than have The Beatles, The Supremes or any other group that has disbanded and ceased performing and recording, but continues to collect royalties from the sale of previously recorded materi-

al. We must reject defendants' contentions that the name Kingsmen has been abandoned to the public domain.

■ We also reject defendants' suggestion that the plaintiffs, or at least Mr. Easton, comes to this Court with unclean hands. The fact that Easton contracted with S.J. Productions to record "Jolly Green Giant" does not by itself suggest appropriation of the name Kingsmen for his own use. None of the plaintiffs contend that Mr. Ely or Mr. Easton is barred from recording "Louie, Louie", "Jolly Green Giant" or any other material previously recorded by The Kingsmen. The fact that Easton himself signed a contract with the representation "Lynn Easton a/k/a The Kingsmen" does not appear to be a willful assertion of the right to use the name Kingsmen in the marketing of his own music, and the contract itself does not appear to indicate any explicit intent to grant such a right to S.J. Productions or any other record company. In any event, even if Mr. Easton had attempted to use the name Kingsmen in association with his own independent recordings, we see no reason why a court of equity should allow that fact to bar the relief to which the other four plaintiffs appear entitled. Whether these four plaintiffs would also be entitled to enjoin the defendants' use of the name Kingsmen in association with Easton's 1976 recording of Jolly Green Giant is a question we need not decide.

There are a number of other important questions we do not decide in this case. As we noted above, we do not suggest that Mr. Ely (or, for that matter, Mr. Easton or any other present or former member of The Kingsmen) is restrained from recording Louie, Louie or any other Kingsmen song. Nor do we suggest that the defendants are barred from selling such a recording to the public. It is the misleading labelling of defendants' album that is the gist of this action. For example, we would see no objection to defendants' marketing of this particular recording of Louie, Louie under the name of Jack Ely with the caption, "formerly of the Kingsmen" or "Jack Ely,

lead singer on the original Kingsmen recording of Louie, Louie." It is the representation that the rendition of Louie, Louie appearing on defendants' album was re-recorded by the individuals collectively known as The Kingsmen that we find likely to confuse and therefore objectionable under the Lanham Act.

We also do not concern ourselves at this time with any rights Mr. Ely might have to receive royalties from the sale of the original recording of Louie, Louie, on which he sang the lead vocal. Ely is not a party to this action, and does not appear to have been a party to any contracts with either Scepter Records, Inc., or Jerden Music, Inc., the original promoters of The Kingsmen.

Finally, we do not decide whether Mr. Easton is entitled to hold himself out as The Kingsmen without the participation of the other plaintiffs, as the defendants argue he did when he entered into his 1976 contract with S.J. Productions to re-record "Jolly Green Giant." It may very well be that given the collective sound of The Kingsmen, no single member of the group would be able to hold himself out as The Kingsmen without a substantial likelihood of confusion on the part of the public. *See Rare Earth, Inc. v. Hoorelbeke,* 401 F.Supp. at 37 n. 19. What is clear is that defendants' representation that the original Kingsmen recorded the version of Louie, Louie appearing on their 60's Dance Party album is misleading and subject to equitable restraint pursuant to the Lanham Act.

Plaintiffs' motion for a preliminary injunction restraining the defendants from selling their album "60's Dance Party" with a representation that the recording of Louie, Louie contained therein was performed by the original Kingsmen is hereby granted. The parties are directed to submit a schedule for expedited discovery. The Court will make every effort to set the earliest possible trial date.

Settle order on notice.