**4**

Ricardo BELL, Michael Bivins, Bobby Brown, Ronald Devoe, and Ralph Tresvant p/k/a New Edition, Infants, respectively, ppa William E. Dern, Plaintiffs and Defendants in Counterclaim,

v.

STREETWISE RECORDS, LTD., Defendant and Plaintiff in Counterclaim,

Boston International Records, Inc., Defendant.

BOSTON INTERNATIONAL RECORDS, INC., Intervenor-Plaintiff,

v.

Ricardo BELL, Ralph Tresvant, Robert Brown, Ronald Devoe, and Michael Bivins, Defendants.

Civ. A. No. 83–4086–Z.

United States District Court, D. Massachusetts.

May 23, 1984.

Dean Richlin, Budd & Wiley, Boston, Mass., for plaintiffs and defendants in counterclaim.

Mark C. Weiner, A. Van C. Lanckton, Craig and Macauley, P.C., Michael Arthur Walsh, Choate, Hall & Stewart, Boston, Mass., for defendants Streetwise and Boston Intern.

## MEMORANDUM OF DECISION

ZOBEL, District Judge.

The five plaintiffs are the members of a singing group called the New Edition. Defendants developed, promoted, and marketed the group and its music. Both sides claim rights to the trademark "NEW EDITION." Both seek preliminary injunctive relief pursuant to § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), enjoining the other from using the "NEW EDITION" mark. A hearing was held before a United States Magistrate who made a thorough report and recommended that plaintiffs' motion for a preliminary injunction be granted. The case is before me now on defendants' objections to the Magistrate's Report and Recommendation.

The defendants do not object to the Magistrate's factual findings. I accept the facts as found by the Magistrate and incorporate them by reference herein.

Defendants vehemently contend that the Magistrate erred in focusing on the meaning of the "NEW EDITION" mark in the minds of the public as dispositive of the ownership of the mark. They urge that, as the source or origin of the goods sold under the mark, they are the owners of the mark. The cases cited by defendants applying the rule of prior appropriation are inapposite, however, because, in contrast to the instant case, they involve disputes between two independent sources. Here, both plaintiffs and defendants played a role in marketing the goods under the mark. As one court has stated, "[a]lthough one may not *lose* rights to a trademark because the public is unaware of one's identity, when determining who *initially acquires* those rights that question is significant." *Wrist-Pocket Manufacturing Co. v. Saunders*, 379 F.Supp. 902, 914 (D.Nebr.1974) (citations omitted) (emphasis in original), *modified*, 516 F.2d 846 (8th Cir.), *cert. denied*, 423 U.S. 870, 96 S.Ct. 134, 46 L.Ed.2d 100 (1975); *see General Business Services v. Rouse*, 495 F.Supp. 526, 534 (E.D.Pa. 1980) (primary inquiry in determining ownership of trademark is "what did the public perceive to be the legal entity standing behind the mark?"); *Noone v. Banner Talent Associates, Inc.*, 398 F.Supp. 260, 263 (S.D.N.Y.1975); *Distillers Brands v. American Distilling Co.*, 26 F.Supp. 988, 989 (S.D.N.Y.1938).

In *Kingsmen v. K–Tel International Ltd.*, 557 F.Supp. 178 (S.D.N.Y.1983), the court enjoined defendants from using the name "The Kingsmen" to identify recordings performed by the original lead vocalist of the popular musical group, rather than by the five performers who "were known to the public as The Kingsmen." *Id.* at 182. The court concluded that defendants' labeling of their recordings would wrongly suggest to the public "that those persons known in the public consciousness as The Kingsmen assembled in a studio to re-record 'Louie, Louie'—an event that all parties agree did not occur." *Id.*

■ I accept the magistrate's conclusion that a similar confusion would result here

if defendants were allowed to use the "NEW EDITION" mark. "The decisive question is not who manufactured the article sold under a given trademark, but which business or article is symbolized by it." 3 Callmann, *The Law of Unfair Competition Trademarks and Monopolies* § 17.16 (4th ed. 1983). As the Magistrate concluded, therefore, defendants are not entitled to a preliminary injunction because they have failed to demonstrate a likelihood of success on the merits. Plaintiffs, on the other hand, have met the standards for the granting of preliminary injunctive relief, having established both likelihood of prevailing on the merits and irreparable injury.

■ Nonetheless, I find that plaintiffs are not entitled to the equitable relief they seek. I am guided by the ancient equitable maxim that "he who comes into equity must come with clean hands." The 'clean hands' doctrine is an appropriate factor in determining whether a preliminary injunction should issue. *See Playboy Enterprises v. Chuckleberry Publishing*, 486 F.Supp. 414, 435 (S.D.N.Y.1980). The maxim "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief." *Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.*, 324 U.S. 806, 814, 65 S.Ct. 993, 997, 89 L.Ed. 1381 (1945). As the Supreme Court has recognized, although " 'equity does not demand that its suitors shall have led blameless lives' as to other matters, it does require that they shall have acted fairly and without fraud or deceit as to the controversy in issue." *Id.* at 814–15, 65 S.Ct. at (citations omitted); *see Norton Co. v. Carborundum Co.*, 530 F.2d 435, 442 (1st Cir.1976).

Plaintiffs in the instant case come before this Court with unclean hands. In October 1982, the five plaintiffs, all infants, signed individual contracts with defendant Streetwise. These contracts unambiguously grant all rights in the name "NEW EDITION" to defendant Boston International Records. Plaintiffs make no claims that

these contracts were the product of over-reaching or unfairness. The terms of the contracts were arrived at after three weeks of negotiations, during which time plaintiffs were represented by two attorneys and two managers. A year later, in November 1983, after plaintiffs had become popular and successful, in large measure due to defendants' efforts, plaintiffs disaffirmed their contracts with Streetwise. In February 1984, they signed a new contract with MCA Records.

It is clear, therefore, that but for their disaffirmance of their contracts with Streetwise, plaintiffs would have no claim to the New Edition mark.[1] Having disclaimed all rights to the mark, plaintiffs now seek equitable relief to assure them exclusive use of the name. Although, as infants, plaintiffs may have the *legal* right to disaffirm their contracts, having done so, they cannot now seek the affirmative aid of a court of equity.

*Carmen v. Fox Film Corporation*, 269 Fed. 928 (2d Cir.1920), *cert. denied*, 255 U.S. 569, 41 S.Ct. 323, 65 L.Ed. 790 (1921) is directly on point. Plaintiff, an infant movie actress, repudiated her contract with defendants and signed a contract with a competitor, Keeney Corporation, having falsely informed the latter that she was free to accept employment. Upon learning of her previous contract and hoping to avoid litigation, Keeney Corporation agreed with defendant that it would not employ plaintiff until the rights of the parties were resolved. Plaintiff then brought suit seeking to enjoin defendant from asserting the validity of the contract. The court stated, in language fully applicable to the case at hand:

> If the contracts with defendants were valid, she was under a legal and moral obligation not to make the contract with the Keeney corporation. And if the contracts were voidable because of her infancy, then, while she was under no legal obligation to recognize them, she was under a moral obligation to abide by them, and good faith required her to continue to render the services she had agreed to give. In either case her action in repudiating her pledged word was misconduct of which no person of honor and conscience would have been guilty. That no action could be brought against her at law because of what she did does not alter the moral character of her act. And when she comes into a court of conscience and asks its affirmative aid to assist her in carrying into effect the inequitable arrangement into which she unfaithfully entered, the appeal falls on deaf ears. One who comes into equity must come with clean hands, and her hands are not clean.

*Id.* at 931. *See Cataphote Corp. v. Hudson*, 422 F.2d 1290, 1295 (5th Cir.1970) (unclean hands doctrine may prevent protection of wrongfully obtained trade secrets).

Plaintiffs' unclean hands bar them from receiving the equitable relief they seek. Defendants too are not entitled to injunctive relief for they have failed to show a likelihood of prevailing on the merits. Accordingly, both plaintiffs' and defendants' motions for a preliminary injunction are denied.

---

**1.** Defendants make no claim to the "NEW EDITION" trademark by virtue of their contracts with plaintiffs in this proceeding. The parties are litigating the validity of plaintiffs' disaffirmance in state court. However this issue is resolved, plaintiffs' conduct was plainly inequitable, foreclosing equitable relief.