565 F.2d 629
 194 U.S.P.Q. 184
 OKLAHOMA BEVERAGE COMPANY, Appellee,
v.
DR. PEPPER LOVE BOTTLING COMPANY (OF MUSKOGEE), a
Partnership consisting of K. C. Love, Sr. and Violet Mills
Love, of Muskogee, Oklahoma, Dr. Pepper Love Bottling
Company (of Bartlesville), a Partnership consisting of John
H. Love, Delia Love, and Kenneth Love, of Bartlesville,
Oklahoma, John H. Love, an Individual residing in
Bartlesville, Oklahoma, K. C. Love, Sr., an Individual
residing in Muskogee, Oklahoma, and Violet Mills Love, an
Individual residing in Muskogee, Oklahoma, Appellants.
 No. 76-1233.
 United States Court of Appeals,
Tenth Circuit.
 Argued and Submitted March 17, 1977.
Decided June 3, 1977.
Rehearing Denied Aug. 1, 1977.
 
 James R. Head, Tulsa, Okl. (Charles P. Gotwals, Jr., Tulsa, Okl., with him, on the brief), for appellants.
 Jerry J. Dunlap, Dunlap, Codding & McCarthy, Oklahoma City, Okl. (Jerry J. Dunlap, II, Oklahoma City, Okl., with him, on the brief), for appellee.
 Before LEWIS, Chief Judge, and SETH and BARRETT, Circuit Judges.
 SETH, Circuit Judge.
 
 
 1
 This declaratory judgment was sought to determine the ownership, as between two beverage bottling companies, of a trademark consisting of the word "Love" in script form concentric with a heart.
 
 
 2
 In 1919, two brothers, J. H. Love and K. C. Love, formed a soft drink bottling partnership in Oklahoma using the trademark of "Love" Beverages. They dissolved the partnership in 1928, and J. H. Love formed a new soft drink business (a partnership with others) in Bartlesville, Oklahoma, and K. C. Love formed one in Muskogee, Oklahoma.
 
 
 3
 J. H. Love obtained United States Trademark Registration No. 248,553 for "Love" in script form in 1928.
 
 
 4
 J. H. Love has used the "Love" Beverage trademark continuously from 1928 until 1964 except for a time during World War II when his brother used it because of special sugar allowances. In 1964 J. H. Love sold his business and its goodwill to the plaintiff Oklahoma Beverage Company.
 
 
 5
 In 1939, K. C. Love obtained United States Trademark Registration No. 372,247 for the mark "K.C." Beverages. During World War II K. C. Love sold "Love" Beverages at Camp Gruber until 1946 when he returned the bottles to his brother. K. C. Love did not use the "Love" Beverage trademark again until 1972 when he obtained a shipment of mislabeled bottles from the Liberty Bottling Company. K. C. Love used the trademark of "K.C." Beverages from 1946 to 1972, but did continue using the trade name of Love Bottling Company or Dr. Pepper Love Bottling Company of Muskogee.
 
 
 6
 United States Trademark Registration No. 248,553 lapsed in 1949. The correspondence between the brothers evidenced that this trademark was considered to be jointly owned by them, although it was registered in J. H. Love's name only. It was intended in 1955 that the new registration, No. 617,924, would be registered in both of their names, but this was not done in spite of the fact that it was K. C. Love who went to Washington, D.C., to have the trademark re-registered. The attorney said that it could not be registered under a partnership name unless that partnership was actually using the trademark; thus it was taken in the name of J. H. Love.
 
 
 7
 In the 1964 sale the J. H. Love partnership conveyed to the plaintiff all of the assets and goodwill along with a covenant not to compete. The assets included the inventory of bottles with the "Love" trademark and crowns with "Love" in script form. The plaintiff has continued the soft drink business under this trademark since the 1964 purchase. The members or owners of the J. H. Love business have never engaged in the soft drink business again for themselves. In 1971 K. C. Love obtained an assignment of the United States Trademark Registration No. 617,924 (the "new" 1955 registration number) from the J. H. Love business, and then filed the trademark with the state of Oklahoma. In 1974 the plaintiff attempted to use the trademark by ordering the bottles from its supplier, Liberty Bottling Company, but K. C. Love interfered by threatening Liberty with a lawsuit for trademark infringement. As a result, the plaintiff sought this declaratory judgment on the ownership of the "Love" trademark.
 
 
 8
 The trial court found that the K. C. Love partnership had abandoned any rights they might have had in the trademark by virtue of their nonuse of it for at least twenty-six years. The judge further found that the plaintiff was the owner of Trademark No. 617,924 because it had purchased all of the assets and goodwill of the J. H. Love business without the seller retaining any control over the use of the mark or the quality of the production. Although the word trademark was not specifically used in the sales agreement, the judge found that the words "trade name" in the contract actually meant "trademark." The contract trade area description was found to be not a limitation on the use of the trademark. Instead it was the area which the J. H. Love partnership had been operating where the covenant not to compete was to be in effect. Thus the defendants were enjoined from interfering with the plaintiff's use of the trademark. From this judgment, the defendants appeal.
 
 
 9
 The defendants urge that they had an equitable interest in the trademark through the dissolution of the brothers' original partnership in 1928, or they have rights through a donative contract. They also argue that they did not have the intent to abandon it, and the plaintiff only has the use of the trademark limited to the trade area described in the contract.
 
 
 10
 Under 15 U.S.C. § 1127, a trademark is a word, name, symbol, device, or any combination used to identify a merchant's goods and distinguish the origin of the goods from those sold by others. Here the "Love" surname is found in both the trademark and the trade name; however, as the plaintiff points out, the issue only involves the trademark and the use of the word "Love" as a trademark. The defendants' right to use "Love" in a trade name is not questioned.
 
 
 11
 The defendants cite various cases and treatises for the proposition that absent agreement on the dissolution of a partnership, all partners have an equal right to use the goodwill and the trademark of the former partnership. By the 1928 dissolution of the brothers' partnership, K. C. Love may have then had a right to use the "Love" trademark, but the right could only be perfected by use. Drexel Enterprises, Inc. v. Richardson, 312 F.2d 525 (10th Cir.); Ph. Schneider Brewing Co. v. Century Distilling Co., 107 F.2d 699 (10th Cir.). The authorities that the defendants cite as to the dissolution of a partnership also hold that the right in the trademark comes from the continued use. 3 Callman, Unfair Competition, Trademarks, and Monopolies, § 78.3(b)(4) (3d Ed. 1969). For at least twenty-six years the K. C. Love partnership did not use "Love" as a trademark, but instead used "K.C." while J. H. Love built his goodwill on "Love." K. C. Love did use the word "Love" in his trade name of Love Bottling Company or Dr. Pepper Love Bottling Company, but this does not resolve the issue here.
 
 
 12
 Testimony and correspondence showed that the two brothers considered the trademark to belong to both, and that there was intent to keep the "Love" trademark in the family. It is also apparent that they also realized that nonuse would cause them to lose ownership of the trademark. K. C. Love was well aware of what might happen to the trademark in the event that J. H. Love sold his business.
 
 
 13
 Intent to abandon a trademark may be inferred from the surrounding circumstances. Drexel Enterprises, Inc. v. Richardson, 312 F.2d 525 (10th Cir.). There was also established a prima facie case of abandonment by reason of a nonuse for two consecutive years. 15 U.S.C. § 1127. Although there was ample evidence of the brothers' intent to continue the "Love" trademark between themselves or at least by one of them, K. C. Love's intent to use the trademark in the future is not sufficient to avoid abandonment. American Photographic Pub. Co. v. Ziff-Davis Pub. Co., 135 F.2d 569 (7th Cir.).
 
 
 14
 It is only through J. H. Love's use of the "Love" trademark that K. C. Love claims the right to the trademark. The K. C. Love partnership had no business affiliation with the J. H. Love partnership. K. C. Love obtained no derivative rights to the trademark from J. H. Love's use of it. The brotherly love between the Love brothers was not enough to overcome K. C. Love's abandonment of the trademark.
 
 
 15
 When J. H. Love sold the entire business assets and goodwill to the plaintiff, it was not until eight years later that K. C. Love again used this trademark. Even this apparently came about through a shipment of mislabeled bottles. From the correspondence in the record, it is apparent that K. C. Love knew that they would lose the trademark if J. H. Love sold his business at least without excepting it. These eight years in themselves show abandonment because of the nonuse with full knowledge that someone other than his brother was using the trademark.
 
 
 16
 The defendants assert that testimony and correspondence also evidence a gift of the trademark to K. C. Love. There was evidence of a donative intent of J. H. Love, and a questionable acceptance by K. C. Love, but nothing to evidence a gift had one been more than intended. There was no assignment.
 
 
 17
 The defendants do raise the defenses of estoppel and acquiescence, but they are not applicable here since the plaintiff did not acquiesce in K. C. Love's use of the "Love" trademark. J. H. Love may have intended to acquiesce in K. C. Love's future use of the trademark, but since K. C. Love never used the trademark again, such intent if it existed is of no use to him now.
 
 
 18
 The defendants urge that under the 1964 sale contract, the plaintiff was only granted a limited use of the trademark in the trade area specified. The contract does not mention Trademark No. 617,924 specifically. Yet J. H. Love sold his entire business including the goodwill, and the goodwill and the trademark are inseparable. Hanover Star Milling Co. v. Metcalf, 240 U.S. 403, 36 S.Ct. 357, 60 L.Ed. 713; Kidd v. Johnson, 100 U.S. 617, 25 L.Ed. 769; Ph. Schneider Brewing Co. v. Century Distilling Co.,107 F.2d 699 (10th Cir.). No particular words are necessary for the assignment when the business and the goodwill are transferred to another who continued the operation under the same trademark. Holly Hill Citrus Growers' Ass'n v. Holly Hill Fruit Products, Inc., 75 F.2d 13 (5th Cir.). See Ph. Schneider Brewing Co. v. Century Distilling Co., 107 F.2d 699 (10th Cir.). Furthermore, the trial judge correctly found that "trade name" used in the contract meant "trademark". 15 U.S.C. § 1127.
 
 
 19
 The trade area specification in the contract was not a limitation on the grant of the trademark, but a description of the J. H. Love partnership's trade area where the covenant not to compete was in effect. The J. H. Love partnership could only grant what rights it had in the trademark. The right to a trademark only extends to the area in which it is used and does not extend this right to other areas where it may be deemed desirable to extend the trade. United Drug Co. v. Theodore Rectanus Co., 248 U.S. 90, 39 S.Ct. 48, 63 L.Ed. 141; Blue Bell Co. v. Frontier Refining Co., 213 F.2d 354 (10th Cir.).
 
 
 20
 The defendants complain that without a reversal of the trial court's decision, several questions are left unanswered. We disagree. The trademark is at issue, not K. C. Love's trade name or his use of it. 15 U.S.C. § 1115(b)(4). With exclusive ownership of the trademark in the plaintiff, and abandonment of it on the part of K. C. Love, there is no question of territorial rights in the trademark between these two litigants in their present locations.
 
 
 21
 AFFIRMED.