DURANGO HERALD, INC., a Colorado Corp., Plaintiff,

v.

Hugh A. RIDDLE and Riddle Directories, Inc., a Colorado Corp., Defendants.

Civ. A. No. 88–F–1273.

United States District Court, D. Colorado.

Dec. 21, 1988.

Gregg I. Anderson, Scott S. Havlock, Holland & Hart, Lesley S. Witt, George G. Matava, Denver, Colo., for plaintiff.

Christopher N. Mammel, Englewood, Colo., for defendants.

## MEMORANDUM OPINION AND ORDER ON INJUNCTIVE RELIEF

SHERMAN G. FINESILVER, Chief Judge.

This matter is before the court on plaintiff's complaint for injunctive relief. This suit for trademark, copyright, and trade dress infringement is brought under the Lanham Act, 15 U.S.C. § 1114, *et seq*, and the copyright statutes, 17 U.S.C. § 101 *et seq. See* 15 U.S.C. § 1121, 28 U.S.C. §§ 1331 and 1338.[1] Pendant jurisdiction is urged as the basis for misappropriation and contract claims.

On December 6, 1988, a consolidated trial on preliminary and permanent injunctive relief was held pursuant to Rule 65(a)(2) of the Federal Rules of Civil Procedure. Evidence was submitted through affidavits, depositions and other written materials.

This case arises out of the pending dissolution of a joint venture owned and operated by the parties. The joint venture publishes annual telephone directories for various communities in Colorado and New Mexico. Defendant Riddle Directories, Inc. ("Riddle") is preparing to distribute an independent directory to Farmington, New Mexico in early 1989. Plaintiff Durango Herald, Inc. ("Herald") contends that the 1989 Farmington directory falls within the joint venture agreement. Herald seeks an order enjoining Riddle's misuse of the joint venture's trademark, trade name, and copyrighted art work in connection with that directory. The primary issue in this case is the rights of each of the parties in the intellectual property of the joint venture.

The joint venture has an indivisible interest in its trademarks and consumer good will. Reciprocal duties of the joint venturers prevent one from taking unfair advantage of consumer good will to the detriment of the other. By this order, we enjoin the parties from infringement or use of the trademark, trade dress, or copyrights of the joint venture.

The following constitutes our findings of fact and conclusions of law.

### I.

On March 2, 1984, Riddle and Herald executed a "Publication Agreement" which established a joint venture to publish annual telephone directories in the Four Corners area of Colorado and New Mexico.[2] Under the agreement, Riddle was responsible for sales and marketing and Herald was responsible for production, billing and collections. The agreement will expire by its own terms on December 31, 1988.

The joint venture directories were published under the trademark and logo "DIRECTORY PLUS." The mark has been continuously used in commerce since April of 1984 and was registered with the Patent and Trademark Office on January 6, 1987. Exhibit 7 (Trademark Reg. No. 1,423,877).

Directories published by the joint venture are covered with a bright red card stock, printed with black, white, and yellow lettering and graphics. Exhibits 31 and 32. The trademark, communities served, and a graphic design are printed in white. The design on each cover is tailored to the community the book serves. Region served is printed and underlined in black.

---

1. Plaintiff's trademark related claims include trademark infringement in violation of 15 U.S.C. § 1114; false designation of the origin of goods and services and trade dress infringement in violation of 15 U.S.C. § 1125(a).

2. The joint venture serves La Plata, Archuleta, Montezuma and San Juan Counties in Colorado and San Juan County in New Mexico. Regional directories are distributed within the area, two of which target Durango, Colorado and Farmington, New Mexico.

Publication dates are printed in yellow. The "Yellow Pages" logo is printed in black and yellow. The pages of the directory are white, blue, yellow and green, in that order, and indicate different sections when viewed from the side.[3]

Riddle began publishing independent directories in 1985. Riddle's directories utilize the same color scheme as "DIRECTORY PLUS." *See* Exhibit 8. The white graphic in the center of the directory is different from that of "DIRECTORY PLUS." The arrangement of information printed on the cover is slightly different from that of "DIRECTORY PLUS." The information is printed according to the same color scheme as "DIRECTORY PLUS." Pages appear white, blue, yellow and green, in that order, when viewed from the side. Unlike "DIRECTORY PLUS," only the borders of the pages are colored. The outward appearance of the Riddle directories is substantially similar to that of "DIRECTORY PLUS."

The Publication Agreement includes a provision which prevents either party from competing with the joint venture in its service area. Although the parties discussed further expansion or extension of the agreement at various times during their joint operation, the agreement was not enlarged. During these discussions, the parties indicated an intent to publish competing directories in the markets formerly served by the joint venture. Both rejected cross-offers to buy out their partnership interests in the "DIRECTORY PLUS" under the terms of the Publication Agreement.

In mid–1988, Riddle began selling advertising space in a Farmington, New Mexico directory. The directory is scheduled for publication in February, 1989. In most of its service areas, the joint venture published five directories. In Farmington, it has only published four. Plaintiff contends that Riddle's Farmington publication falls within the Publication Agreement and Riddle's independent publication will misappropriate the identifying mark and features of "DIRECTORY PLUS." Defendants contend that the agreement does not control its February 1989 publication, the joint venture has no protectable trade dress, and even if the joint venture did have protectable property rights, those rights expire upon termination of the agreement in December of 1988, prior to publication of the 1989 Farmington directory.

Three questions are presented in this phase of the litigation: 1) whether the joint venture's rights in its trademark, copyrights and/or trade dress can be infringed after dissolution on December 31, 1988; 2) whether the joint venture has a trade dress protected under federal law; and 3) whether Riddle's directories will infringe on those identifying features when introduced to the relevant market.

## II.

▮ Plaintiff contends that the marks of the joint venture and the good will to which they attach are proprietary assets of the joint venture, that Riddle has misappropriated these assets, and that, under partnership law, Herald is entitled to a court ordered accounting for this action. In regard to the services Riddle was to provide, the misappropriation issue derives from contract duties for which damages provide an adequate remedy at law. To the extent that Herald seeks a declaration that its rights in the trademark are superior to those of Riddle, such a declaration is contrary to the purposes of trademark protection. 1 J. McCarthy, *Trademarks and Unfair Competition*, § 16:14 at 752 (1984) (distribution of trademark rights upon dissolution of a joint entity is "superficially equitable" and would lead to consumer confusion regarding product source). We have considered and reject plaintiff's request for an accounting of Riddle's use of "DIRECTORY PLUS" promotional materials and trademark in marketing the 1989 Farmington directory.

## III.

▮ The property rights involved in this litigation are different from the real prop-

---

**3.** White indicates alphabetical listings, blue indicates government listings, yellow indicates commercial advertising, and green indicates street and address listings.

erty rights distributed upon dissolution of a partnership. The consumer good will earned by the "DIRECTORY PLUS" joint venture are inseparable from its trademark and trade dress. *Visa USA, Inc. v. Birmingham Trust National Bank*, 696 F.2d 1371, 1375 (D.C.Cir.1982), *cert. denied sub nom.*, 464 U.S. 826, 104 S.Ct. 98, 78 L.Ed.2d 104 (1983); *see also In re Owens–Corning Fiberglass Corp.*, 774 F.2d 1116, 1119 (Fed.Cir.1985). The mark cannot be used without triggering the public perceptions which make up the joint venture's reputation. *Visa USA*, 696 F.2d at 1375 (citing cases); *Oklahoma Beverage Co. v. Dr. Pepper Love Bottling Co.*, 565 F.2d 629, 631 (10th Cir.1977). Such identifying marks are protected under state and federal law because preserving commercial reputation furthers the public interest in both innovation and consumer information. *See Park'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 198, 105 S.Ct. 658, 663, 83 L.Ed.2d 582 (1985) (national trademark protection secures good will and protects ability of consumers to distinguish competing products).[4] Good will necessarily travels with the mark. *See Intrawest Financial Corp. v. Western National Bank of Denver*, 610 F.Supp. 950, 960 (D.Colo.1985) (corporation has no claim to good will inuring to mark once licensed to another).

The joint venture was formed for the purpose of developing, publishing and selling advertising in telephone directories. Exhibit 6. The success of a telephone directory rests on its ability to provide advertisers access to a broad population of consumers who identify the directory as the primary source of commercial information. *See* Exhibit DD, Affidavit of Riddle, p. 4. Success thus depends upon the development of the good will of the general public as well as the good will of advertisers. The development of good will is central to the goals of the "DIRECTORY PLUS" joint venture.

■ The problems which flow from the individual rights of partners to a dissolved joint enterprise are often complex. *See, e.g., Oklahoma Beverage Co. v. Dr. Pepper Love Bottling Co.*, 565 F.2d 629, 631 (10th Cir.1977) (partner has no claim to individual rights in trade name without perfection by use). Defendants contend that trademark or trade dress cannot be infringed once the entity owning the marks has dissolved. Mere dissolution of the holder of a trademark, however, does not amount to an extinction of the rights of the parties in that mark. *Kingsmen v. K–Tel International, Ltd.*, 557 F.Supp. 178, 183 (S.D. N.Y.1983). Dissolution must be coupled with an intent to discontinue interest in the mark and the good will accompanying it. *Id.*; 15 U.S.C. § 1127(a) (statutory abandonment). Neither party has indicated an intent to disaffirm its rights in the good will inuring to "DIRECTORY PLUS" and, in fact, this litigation is basically a dispute over the ways the parties may lawfully appeal to that good will.

Whether the duty flows from the Publication Agreement or the fiduciary duties of partners, one partner may not exploit the unique assets of the joint venture to the detriment of the other. *See Kodekey Electronics, Inc. v. Mechanex Corp.*, 486 F.2d 449 (10th Cir.1973) (trade secrets cannot be disclosed simply because contractual relationship has terminated); *Shurtenda Steaks, Inc. v. Walking Corp. of Colorado*, 472 P.2d 156 (Colo.App.1970) (exclusive supplier of meats prepared according to plaintiff's recipes enjoined from selling same product to another wholesaler after termination of relationship).

Both Herald and Riddle have reciprocal duties not to use the primary asset of the "DIRECTORY PLUS" joint venture for their individual benefit in a manner which burdens or injures only the other party.

---

**4.** *See also Kingsmen v. K–Tel International, Ltd.*, 557 F.Supp. 178, 181 (S.D.N.Y.1983) (Lanham Act claims protect public from misrepresentation that a product was produced or authorized by a particular entity); *Adolph Coors Co. v. A. Genderson & Sons, Inc.*, 486 F.Supp. 131, 135–36 (D.Colo.1980) (prevention of public deception and protection of rights in good will underlie both Colorado and federal trademark law); *United States Bank of Grand Junction v. Mesa United Bank of Grand Junction*, 595 P.2d 259 (Colo.App.1978) (goal of unfair competition law in Colorado is prevention of public deception).

The Lanham Act provides several avenues for injunction of the unfair misappropriation of good will and consumer confusion which results from the use of substantially similar marks and packaging in marketing a new product. *Estate of Presley v. Russen*, 513 F.Supp. 1339, 1377 (D.N.J.1981).

## IV.

In order to prevail on a motion for preliminary injunction, the moving party must show:

(1) substantial likelihood that it will prevail on the merits of the claim;

(2) it will suffer irreparable injury if the injunction does not issue;

(3) impending injury to movant far outweighs the harm caused to the opposing party by the injunction;

(4) injunction will not be adverse to the public interest.

*Hartford House, Ltd. v. Hallmark Cards*, 647 F.Supp. 1533, 1544 (D.Colo.1986), *aff'd*, 846 F.2d 1268 (10th Cir.), *cert. denied*, — U.S. ——, 109 S.Ct. 260, 102 L.Ed.2d 248 (1988); *Lundgrin v. Claytor*, 619 F.2d 61, 63 (10th Cir.1980).

■ The standard for permanent injunction is essentially the same as that for preliminary injunction with the exception that a plaintiff must demonstrate actual success on the merits of his claim. *Amoco Production Co. v. Village of Gambell, Alaska*, 480 U.S. 531, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987). Implicitly, the standards for permanent injunction are less demanding than those of preliminary injunction. *See Henson v. Hoth*, 258 F.Supp. 33 (D.Colo.1966). Reviewing a complete record, the court applies an actual burden of proof to the claims rather than speculating about the movant's ultimate ability to meet that burden. We address the merits of plaintiff's Lanham Act and unfair competition claims first.

### A. *Trademark Infringement and False Designation of Origin.*

■ Plaintiffs allege two occurrences of infringement or false designation of origin.

Riddle has not used the mark on his independent products since 1987. On the cover of a directory distributed in Flagstaff, Arizona during 1987, Riddle printed the words "Publisher of" above the trademark "DIRECTORY PLUS." Exhibit 8. The mark appears on the lower left corner of the back cover. Riddle salespeople operating in Farmington, New Mexico during 1988 also used the "DIRECTORY PLUS" trademark during sales calls for Riddle's 1989 Farmington directory. The mark and name appeared on order forms and promotional surveys given to advertisers. Exhibits 16, 20, 30.

To prove infringement in violation of the Lanham Act, the moving party must show: (1) the mark is validly registered, (2) defendants' use of the mark was unauthorized, and (3) defendants' use is likely to cause confusion in the market place concerning the source or quality of the products. *USA Network v. Gannett Co. Inc.*, 584 F.Supp. 195, 198 (D.Colo.1984).

To prevail on a claim of false designation of origin, the moving party must show: (1) defendants' designation of the source of a product was false, (2) defendants caused goods so identified to enter commerce, and (3) defendants' false statement is likely to damage the moving party. 15 U.S.C. § 1125(a) (Lanham Act § 43(a)).

Herald contends that use of the mark and name as described above violates both theories of Lanham Act protection and should be enjoined. Defendants do not contest that mark was duly registered, that the use was not authorized by Herald, or that the goods entered commerce. The dispute centers on the potential for confusion and the question of falsehood.

Defendants contend their use makes no indication of source and is, therefore, not actionable; and further that their use is a truthful statement of Riddle's relationship to "DIRECTORY PLUS" and appears on the back of a directory which prominently displays Riddle's own logo and trademark on its face. Defendants further contend that disclosure statements signed by each Farmington advertiser demonstrate that those consumers know Herald is not affil-

iated with the forthcoming directory. Finally, defendants assert that Herald's own actions prevent it from seeking equitable relief from the challenged uses. In November of 1988, two public radio announcements identified Herald as "co-publisher of DIRECTORY PLUS." Exhibit Y.

■ A truthful statement which incorporates the trademark of another producer is not actionable because it neither leads to consumer confusion nor falsely designates the source of a product. *See, e.g., G.D. Searle & Co. v. Hudson Pharmaceutical Corp.*, 715 F.2d 837 (3d Cir.1983); *Societe Comptoir de l'Industrie Cotonniere, Establissements Boussac v. Allexander's Department Stores*, 299 F.2d 33 (2d Cir.1962); *Herbert Products, Inc. v. S & H Industries, Inc.*, 200 U.S.P.Q. 247 (E.D.N.Y. 1977). In each of the cases applying this proposition, however, the protected use distinguished the product being promoted from the trademarked product. *Stormor v. Johnson*, 587 F.Supp. 275, 278–79 (W.D. Mich.1984); *see Societe Comptoire*, 299 F.2d 33 ("Original by CHRISTIAN DIOR– Alexander's Exclusive Paris–Adaptation"); *G.D. Searle*, 715 F.2d 837 ("Equivalent to METAMUCIL"). Deceptive innuendo, although technically truthful, is still infringement. *American Home Products Corp. v. Johnson & Johnson*, 577 F.2d 160, 198 U.S.P.Q. 132, 137 (2d Cir.1978). The focus of trademark infringement or false designation of origin analysis remains whether the unauthorized reference causes confusion as to the source of the product. *Herbert Products*, 200 U.S.P.Q. at 250.

In our view, defendants' identification of Riddle Directories as "publisher of DIRECTORY PLUS" on the Flagstaff directory constitutes deceptive innuendo. The use does not acknowledge the existence of the joint venture as a separate entity. While the disclosure forms signed by advertisers may lessen the potential that they will confuse the source of a directory bearing such a mark, consumers within the joint venture's service area would identify the book as related to "DIRECTORY PLUS." The general public is not privy to the disclosure forms and is likely to view the mark as indicative of sponsorship or affiliation. *See Estate of Presley v. Russen*, 513 F.Supp. 1339, 1367 (D.N.J.1981). Riddle's use has serious potential of convincing the public that this product is a continuation of "DIRECTORY PLUS" in violation of the Lanham Act and Colorado law. *Stormor*, 587 F.Supp. at 278–279; *United States Bank of Grand Junction v. Mesa United Bank of Grand Junction*, 595 P.2d 259 (Colo. App.1978) (relevant evidence is not limited to confusion of specific customers but includes confusion of the public at large). Similar use within the joint venture's service area would constitute breach of Riddle's duty not to exploit the good will of the joint venture to the detriment of Herald— Riddle's use would require Herald to bear the burden of distinguishing Riddle's product from "DIRECTORY PLUS."

■ Herald's use of the trade name in radio announcements does not constitute deceptive innuendo. First, the trade name is conveyed through a completely different medium and is not attached to a product the public identifies with the mark. The use does not indicate source. Second, the word "co-publisher" acknowledges the actual role of Herald in the joint venture. Herald's use of the trade name communicates its experience as a co-publisher of a successful telephone directory. Statements like those of Herald are the only appropriate affiliation with the good will of the joint venture available to the parties upon dissolution of their partnership—the parties may boast about their joint success in that endeavor but may only do so in a manner that avoids the deceptive suggestion that "DIRECTORY PLUS" continues under the sole control of one former partner.

■ As to Riddle's use of "DIRECTORY PLUS" materials to promote and sell advertising in the 1989 Farmington directory, the likelihood of resulting confusion is very high. Through use of the same marketing staff, of "DIRECTORY PLUS" order forms, and of the last published edition of "DIRECTORY PLUS" in promoting the 1989 Farmington directory, Riddle has effectively communicates to advertisers that

his product will be a continuation of "DIRECTORY PLUS." Exhibits 16 and 29; *see also* Exhibits EE at p. 33 and FF at p. 10 (depositions of Farmington advertisers).

The goal of trademark protection is as much the orderly organization of property rights and the rewards of innovation as it is the preservation of clear channels of communication about source and quality of marked goods. The record reflects the fact that Riddle falsely designated or misrepresented the association of the 1989 Farmington directory with "DIRECTORY PLUS" in a manner which is likely to cause confusion among advertisers. *Prompt Electric Supply Co. v. Allen–Bradley Co.*, 492 F.Supp. 344 (E.D.N.Y.1980) (continued use of trademark after disaffiliation as dealer causes confusion as to existence of relationship even though defendant continues to deal with plaintiff's products); *Estate of Presley v. Russen*, 513 F.Supp. 1339, 1367 (D.N. J.1981) (death of entertainer does not prevent finding that public would be confused that his estate sponsored infringing use).

■ Existence of potential confusion is confirmed by evidence that several purchasers of advertising for the 1989 Farmington directory believed they were placing advertisements in "DIRECTORY PLUS." Several purchasers sent payment for their advertising to Herald, as they had in previous years. Exhibits 13, 14, 15, 16, 17, 18, 20. Although evidence of actual confusion is not necessary to Lanham Act liability, actual confusion is persuasive reinforcement of an assertion that confusion is likely. *Stormor*, 587 F.Supp. at 280; *see also Hartford House, Ltd. v. Hallmark Cards*, 647 F.Supp. 1533, 1544 (D.Colo.1986), *aff'd*, 846 F.2d 1268 (10th Cir.), *cert. denied*, — U.S. —, 109 S.Ct. 260, 102 L.Ed.2d 248 (1988). Riddle's disclaimer to advertisers that it alone would be publish the 1989 Farmington directory did little to persuade advertisers that they were purchasing advertising in some publication other than "DIRECTORY PLUS." Exhibit EE at p. 26 (deposition of advertiser, purchase based on proof of distribution and acceptance of the Red Book).

■ Plaintiff has proven its claim that Riddle's continued use of the trademark within areas previously served by the joint venture would amount to trademark infringement and false designation of the origin of Riddle directories.[5]

### B. *Trade Dress Infringement.*

■ A federal cause of action for privileged imitation of appearance, including trade dress infringement, is available under Section 43(a) of the Lanham Act. *Hartford House, Ltd. v. Hallmark Cards, Inc.*, 846 F.2d 1268, 1271 (10th Cir.), *cert. denied*, — U.S. —, 109 S.Ct. 260, 102 L.Ed.2d 248 (1988).

> Trade dress is a complex composite of features. One may be size, another may be color, or color combinations, another may be texture, another may be graphics and arrangement and so on. Trade dress is a term reflecting the overall general impact, usually visual, but sometimes tactile, of all these features taken together.

*Id.* (quoting and citing cases). To prevail on a claim of trade dress infringement, a plaintiff must show: (1) that the trade dress, whether a single feature or a combination of features, is non-functional; (2) that the trade dress has acquired secondary meaning; and (3) that there is a likelihood of confusion among consumers as to the source of the competing products. *Id.* Where the plaintiff can show secondary meaning and likelihood of confusion, the burden of proof shifts to the defendant to show functionality. *Id.* at 1271, n. 3.

■ Strong evidence is present that the appearance of "DIRECTORY PLUS" has

---

5. The focus of the briefing and argument during this phase of the litigation was on the anticipated use of the trademark within the relevant market, viewing Riddle's Arizona directories as evidence of intended use. The record is insufficient to determine whether the use of the trademark in Arizona, an area not served by the joint venture, amounted to infringement for which the joint venture may recover damages. Plaintiff presented no evidence as to the likelihood of confusion in this market. Accordingly, we find that this particular use is not independently actionable.

taken on secondary meaning within the communities the joint venture serves. The joint venture's directories are commonly known as the Red Book. Exhibits FF at p. 6, EE at p. 26 (depositions of advertiser/consumers on use of Red Book); Exhibit 12 (magazine interview with Hugh Riddle on public identification of the Red Book).[6] Because of this consumer recognition, advertisers are more concerned with placement of their information in the Red Book than with the identity of the firm publishing the book. *See* Exhibit EE at p. 26. In the minds of the public, the primary significance of the directory's appearance is to identify it as the best source of telephone listings within the relevant market.[7] Plaintiff has established the fact that the combination of features which comprise the outward appearance of "DIRECTORY PLUS," including its prominent red cover, have acquired secondary meaning. *Carol Cable Co. v. Grand Auto Inc.*, 4 U.S.P.Q.2d 1056, 1059–60, 1987 WL 14544 (N.D.Cal.1987); *Hartford House, Ltd. v. Hallmark Cards*, 647 F.Supp. 1533, 1543 (D.Colo.1986), *aff'd*, 846 F.2d 1268 (10th Cir.), *cert. denied*, — U.S. —, 109 S.Ct. 260, 102 L.Ed.2d 248 (1988).

■ Analysis of the likelihood of confusion that could result if Riddle were to introduce similar directories to the communities served by the joint venture requires consideration of several factors: (1) similarity of products, (2) identity of retail outlets and purchasers, (3) identity of advertising media, (4) strength of trade dress, (5) defendant's intent, (6) similarity of design, (7) presence of actual confusion, (8)

degree of care likely to be exercised by consumers, and (9) other relevant evidence. *Hartford House*, 647 F.Supp. at 1543 (citing cases). The court should not undertake a side-by-side comparison, but should recognize that a consumer "necessarily depends upon the mental picture of that which symbolizes origin and ownership of the thing desired." *Beer Nuts, Inc. v. Clover Club Foods Co.*, 711 F.2d 934, 941 (10th Cir.1983).

The outward appearance of Riddle's independent directories is substantially similar to those of the joint venture.[8] To the casual eye, Riddle's Arizona directories appear to be the same book that has been distributed in the joint venture's service areas for the past five years. Although the graphic arrangement of lettering on the cover is somewhat different, the colors on the cover take on deceptively similar importance to the overall appearance of the books. As noted above, substantial good will attaches to this appearance. Deposition testimony from advertisers demonstrates that their confidence in the Red Book is due in large part to its public acceptance and faith that the Red Book will continue to be distributed as it has in the past. *See* Exhibit FF at p. 26–28. The overall appearance of Riddle's directories strongly suggest the likelihood that consumers will conclude these directories are the same publication on which they have come to rely. Thus the arrangement of colors on "DIRECTORY PLUS" publications is protectable. *Carol Cable Co.*, 4 U.S.P.Q.2d at 1059.

We have considered and reject Riddle's contentions that (a) primary background

---

**6.** We have considered and reject defendants' contention that the positions taken by the parties during settlement negotiations in another matter in 1984 estop the joint venture seeking to protect its red-covered trade dress. The joint venture's trade dress has now acquired secondary meaning which could not have been anticipated during that negotiation.

**7.** Riddle presented one red covered directory which it claims was distributed in the joint venture's market prior to development of "DIRECTORY PLUS." The Rocky Mountain Oil Field Directory was distributed to the oil industry in six states during early 1981. Riddle Affidavit Exhibit 14. Riddle also submitted several

directories from various other communities outside the joint venture's geographical markets. Riddle Affidavit Exhibits 9–15. These submissions do not lessen the substantial evidence that the Red Book has taken on strong secondary meaning within the relevant market of general consumers and advertisers in the communities served by the joint venture.

**8.** Positions taken by Riddle in this litigation and the perceptions of advertisers in Farmington, New Mexico demonstrate Riddle's intent to publish books similar to those it published independently for Flagstaff and Gilla County, Arizona. Exhibit 8 and Riddle Affidavit Exhibit 16.

**950**

colors are not protectable as trade dress, and (b) the background color red and the color combinations comprising the outward appearance of the joint venture's directories are functional, and therefore unprotectable.

Under the Lanham Act, courts do not treat color as *per se* unprotectable in the context of trade dress. *In re Owens Corning Fiberglas Corp.*, 774 F.2d 1116, 1118–21 (Fed.Cir.1985) (citing cases); *see also Carol Cable Co. v. Grand Auto Inc.*, 4 U.S.P.Q.2d 1056, 1059 (N.D.Cal.1987) (concerns color monopoly could lead to a depletion of packaging alternatives no longer bar registration of color marks). Strong evidence of secondary meaning and evidence that a manufacturer has expended considerable resources to acquire that secondary meaning can extend protection to primary colors incorporated in trade dress. *In re Owens Corning*, 774 F.2d at 1121–24; *Nor–Am Chemical v. O.M. Scott & Sons Co.*, 4 U.S.P.Q.2d 1316, 1319, 1987 WL 13742 (E.D.Penn.1987). These circumstances exist in this case: (1) strong secondary meaning of the trade dress of the joint venture product exists in the public acceptance and identification of the Red Book in the markets it serves; (2) the joint venture exists to create the good will from which it benefits. The red cover with white, yellow and black writing imposed upon it is protectable under the Lanham Act.

This combination of features is non-functional. In *Hartford House*, the Tenth Circuit Court of Appeals clarified the test for functionality: "Whether the feature is functional should turn on 'whether the protection of the [feature] would hinder competition or impinge upon the rights of others to compete effectively in the sale of goods." 846 F.2d at 1272. A combination of features may be nonfunctional notwithstanding the fact that the combination includes functional features. *Id.* (citing cases). The court quoted language particularly relevant to this case:

If that feature [or combination of features] must be slavishly copied in order to have an equally functional product, then the feature [or combination] is not entitled to protection. But if the feature [or combination of features] enables the second-comer simply to market his product more effectively, it is entitled to protection.... *the decision should nevertheless rest on whether alternative designs or presentations of the product can be developed.*

*Id.* at 1273 (emphasis in original, quoting *Brunswick Corp. v. Spinit Reel Co.*, 832 F.2d 513, 516–17 (10th Cir.1987)).

Riddle contends that a predominantly red background is functional because it attracts attention to the book. A color is functional when the general public attaches some meaning to it other than that created by effective marketing or promotion. For example, the color blue indicates the presence of nitrogen to the scientific community, therefore, a fertilizer manufacture may not seek exclusive rights to the color. *Nor–Am Chemical*, 4 U.S.P.Q.2d at 1319.[9] The function of the Red Book trade dress is a marketing function—it identifies the directory as the book which has satisfied the needs of consumers and advertisers in each of the relevant markets for the past five years. This function is the foundation of trade dress protection. *In re Owens–Corning*, 774 F.2d at 1121. Protection of one of the several color combinations available to Riddle, and particularly the red cover to which significant good will attaches, does not hinder competition or remove a valuable qualitative feature from Riddle's product. *See Id.*, 774 F.2d at 1120–21. Riddle has not shown that alternative designs like those appearing in the record could not be to effectively marketed to attract the same attention as the joint venture's red cover or the Bell system's yellow cover. *Vaughan Manufacturing Co. v. Brikam International Inc.*, 814 F.2d 346, 1 U.S.P.Q.2d 2067, 2070–71 (7th Cir.1987); *see* Moore Affidavit Exhibit 8

**9.** Another example of a functional color is the bright orange hunters must wear while in the back country. Exclusive rights to the color would prevent competition since clothes of another color could not be sold to hunters.

(tan covered "PHONE BOOK" with american indian art on front and back covers distributed in Taos, New Mexico).

To allow Riddle to capitalize on the current confusion of advertisers by publishing a phone book with a substantially similar trade dress would be contrary to the public interest in trademark protection. *Carol Cable Co.*, 4 U.S.P.Q.2d at 1059. The appearance of a deceptively similar Red Book within the joint venture's service area shortly after dissolution would enlarge advertiser confusion and form a public perception that Riddle's books were a continuation of the joint venture. Such deception would be contrary to both the Lanham Act and Colorado common law. *Kingsmen v. K-Tel International, Ltd.*, 557 F.Supp. 178, 181 (S.D.N.Y.1983); *United States Bank of Grand Junction v. Mesa United Bank of Grand Junction*, 595 P.2d 259 (Colo.App.1978).

C. *Irreparable Harm and the Public Interest.*

■ The complexities of joint ownership of trademarks involved in this litigation require that, before issuing injunctive relief, we consider injury to plaintiff in the context of the public interest in trademark enforcement.

In the absence of a contractual resolution, the court determines ownership in equity by a review of the circumstances of the case, history of the parties relations, and likely understandings of the parties with regard to the trademark and trade dress. 1 J. McCarthy, *Trademarks and Unfair Competition*, § 16:14 at 755 (1984). Evidence demonstrates that the parties had *no* agreement or understanding of their individual rights in the trade dress or trademark. The parties agreed only that either both or neither could use the trademark. Exhibits C, DD, and GG.

The law of intellectual property does not sanction use of one trade dress or trademark by two competitors in the same market. 1 J. McCarthy, *Trademarks and Unfair Competition*, § 16:14 at 749 (1984). Consumer confusion which would necessarily result from dual use is contrary to the goals of trademark protection. *Bell v. Streetwise Records, Ltd.*, 761 F.2d 67, 76 (1st Cir.1985) (Breyer, J., concurring) (public interest in trademark served only by determination of which party has exclusive right to use).

In some cases, courts have awarded exclusive rights to the party most responsible for the good will attaching to a mark. *See Bell v. Streetwise Records, Ltd.*, 640 F.Supp. 575, 579–82 (D.Mass.1986) (on remand). The record in this case, however, does not reflect any indication that the good will of "DIRECTORY PLUS" can be attributed to the efforts of one party above the other.

Disputes regarding musical groups often focus on the overlay of the duties between joint venturers and the rights conferred by the trademark protection. A group member who leaves a musical group can be enjoined from misappropriating the reputation and marketability of the group under trademark infringement theories, even after the group has dissolved. *See, e.g., Kingsmen v. K-Tel International, Ltd.*, 557 F.Supp. 178, 181 (S.D.N.Y.1983); *see also* 1 J. McCarthy, *Trademarks and Unfair Competition*, § 16:14 at 754–57 (1984 & Supp.1987) (discussing cases). These cases suggest that joint control of a jointly-held mark is the only means of preventing injury to the immeasurable interests of one member in the good will of the group. Herald's interest in the joint venture's good will is immeasurable. Accordingly, the injury of misappropriating this good will is irreparable.

Overriding concerns of trademark law for consumer information require that we enjoin independent use of the joint mark. *Id.* at 753. "Customer protection policy should prevent operation of an agreement that results in multiple, fragmented trademark usage by a plurality of separate persons." *Id.* Thus, allowing both Herald and Riddle to use the trademark to compete in the relevant markets would violate the policies underlying federal and Colorado law. To permit Riddle alone to use the mark simply because he was the first of the joint venturers to develop a successor

to "DIRECTORY PLUS" would allow him to breach the continuing duties he owes to Herald. The inequity of this approach is furthered by the existence of a genuine dispute as to the rights of the joint venture to the directory Riddle is preparing to publish and distribute within the relevant market.

The public has a significant interest in preserving the vitality of joint ventures as a means of innovation and creativity. The potential that one party to a joint venture could legally appropriate all the good will of a joint venture while inhibiting the ability of other parties to do the same would discourage innovation. Participation and trust necessary to the optimum cooperation between the parties would be lessened.

The appropriate equitable approach in this case is to return the parties to equal advantage upon dissolution of the joint venture. Because the parties have been unable to arrive at a mutual distribution of the trademark which would inure further benefit to each, the only benefit each may take from "DIRECTORY PLUS" is the knowledge of how to develop successful telephone directories. It is indeed unfortunate that elusive independent resolution of this dispute has forced the court to, in effect, extinguish a valuable asset produced by years of hard work, energy and investment of the parties. The result is necessary, however, to prevent further irreparable injury to the parties and continued consumer confusion.

### D. *Balance of Harms.*

■ The threatened injury to Herald and the indivisible property rights of the joint venture outweighs the harm of forcing Riddle to redesign the outward appearance of its 1989 Farmington directory. Riddle will be forced to design around the "DIRECTORY PLUS" trademark and trade dress and to develop its own camera ready art work for use by advertisers. Injunction of the independent use of these materials will prevent Riddle from forcing Herald to compete with the good will and trade dress in which it has protectable rights. Both parties will bear the similar

burden of proving the quality of their independent products.

■ Throughout the course of this litigation, Riddle has asserted various equitable defenses to injunctive relief including unclean hands of plaintiff in the contract dispute, laches, acquiescence and estoppel. Evidence going to these theories includes allegations that Herald wrongfully retained proceeds from the 1989 Farmington directory misdirected to it by advertisers as well as proceeds from earlier joint venture directories. Riddle also points to Herald's delayed objection to its use of the trademark and trade dress in Arizona. Some of the irritants arising out of the contract dispute have been resolved by the parties. Proof of equitable defenses may bar injunctive relief. However, the totality of the circumstances must suggest that plaintiff viewed the culpable conduct of which he now complains as non-injurious or caused similar injury to the defendant. *See Vaughan Manufacturing Co. v. Brikam International Inc.*, 814 F.2d 346, 1 U.S.P.Q.2d 2067, 2071 (7th Cir.1987); *Sweetheart Plastics, Inc. v. Detroit Forming, Inc.*, 743 F.2d 1039, 1045-48 (4th Cir. 1984). Herald may have delayed action to prevent use of the trademark in a market in which the mark carried no significant good will, but as soon as it discovered Riddle's intent to similarly infringe on the property of the joint venture within the relevant markets, Herald took the necessary steps to prevent actual injury. Accordingly, the conduct of Herald does not bar injunctive relief.

### ORDER

Plaintiff Durango Herald has met its burden of proving that defendant Riddle Directories, Inc. has and will continue to infringe on the trademark and trade dress of the "DIRECTORY PLUS" joint venture, to falsely designate the origin of its 1989 Farmington directory in a manner that will misappropriate the good will of the joint venture and confuse the public. Such infringement will cause irreparable injury to Herald. The public interest will be served by an order of injunctive relief which pre-

vents non-compensable injury and consumer confusion. Injunction of the use of the trademark, trade dress and copyrighted art work of the joint venture by either party will not unduly burden Riddle Directories. Herald's participation in Riddle's 1989 Farmington directory is not necessary to preventing irreparable harm, however, because any claim Herald has to profits from that directory and the misappropriation of services and the trademark in the development of that directory are compensable in contract damages and/or an accounting upon dissolution of the joint venture.

Furthermore, state law contract claims between non-diverse parties will predominate the remainder of this litigation upon resolution of federal trademark claims. The interests of the parties and the courts in the efficient progress of this litigation will be served by trial in an appropriate state forum.

IT IS HEREBY ORDERED that plaintiff's motion for preliminary and permanent injunction is GRANTED IN PART; it is further

ORDERED that defendants Hugh A. Riddle and Riddle Directories, Inc., plaintiff Durango Herald, Inc., their agents, directors, employees, successors and assigns and all persons in active concert or participation with either of them or the "DIRECTORY PLUS" joint venture are permanently enjoined from independent use of the following in connection with the publication, promotion, or distribution of any telephone or similar directory:

(1) the "DIRECTORY PLUS" trademark, any reproduction or colorable imitation thereof, in any manner;

(2) the trade dress comprising the outward appearance of "DIRECTORY PLUS," specifically a red-colored cover with any combination of white, yellow and black or other color lettering similar to that comprising the trade dress of the joint venture, and or with colored pages forming the white, blue, yellow and green stripes visible along the edges of the joint venture directories;

(3) the copyrighted camera-ready art work of the "DIRECTORY PLUS" joint venture; it is further

ORDERED that defendants' motion for summary judgment on plaintiffs' intellectual property and unfair competition claims is DENIED; it is further

ORDERED that defendant's motion to dismiss pendant state claims is GRANTED; plaintiffs claims for conversion, breach of contract, tortious interference with prospective business advantage, and breach of duties of good faith and fair dealing and other injuries alleged in plaintiff's amended complaint not resolved by this order are DISMISSED WITHOUT PREJUDICE; it is further

ORDERED that judgment shall enter pursuant to this order, each party to bear its own costs.