REVIEW DIRECTORIES INC., a Michigan corporation, Plaintiff,

v.

McLEODUSA PUBLISHING COM-PANY, an Iowa corporation, Defendant.

No. 1:99–CV–958.

United States District Court, W.D. Michigan, Southern Division.

July 24, 2001.

R. Terrance Rader, Glenn E. Forbis, William Cosnowski, Jr., Ellen A. Efros, Rader, Fishman & Grauer, PLLC, Bloomfield Hills, MI, for plaintiff.

Ruth E. Zimmerman, Honigman, Miller, Schwartz & Cohn, Lansing, MI, Herschel P. Fink, Mark A. Stern, Honigman, Miller, Schwartz & Cohn, Detroit, MI, for defendant.

*OPINION*

ENSLEN, District Judge.

This matter is before the Court on Defendant's Motion for Partial Summary Judgment with Regard to Defendant's Use of Prior Years' Directories. The Court grants the Motion.

**BACKGROUND**

These parties have filed many documents with this Court. As a result, both the parties and the Court are familiar with the facts of this case. Therefore, only those facts relevant to this Motion shall be reiterated in this Opinion.

This Motion addresses Plaintiff's claim that Defendant infringed its PhoneGuide trademark by allowing its salespersons to carry with them on sales calls the telephone directories published in a prior year by companies Defendant has purchased. Defendant claims that its use of the PhoneGuide trademark was incidental and a fair use.

Defendant seeks dismissal of the infringement claims with respect to its allegedly infringing use in the South Central Upper Peninsula ("SCUP") market in connection with the 2000 J–Mar[1] directory for that market. After purchasing J–Mar in July 1999, Defendant used J–Mar to sell advertising in the 2000 SCUP directory. In response to Plaintiff's Request, Defendant has admitted that its sales representatives carried with them on sales calls the 1999 SCUP directory which had been published by J–Mar and which contained the PhoneGuide trademark. According to Defendant, the 1999 SCUP directory was used to compare and contrast the way advertisements looked in 1999 with the way they would look in the 2000 directory. In addition, Defendant claims that the

1. J–Mar is a publishing company that sold its stock to Defendant. J–Mar also was a prior licensee of Plaintiff's, wherein it could use the PhoneGuide trademark at issue.

1999 SCUP directory was used to discuss any revisions advertisers wished to make in the advertisement for the 2000 publication. It was also used to familiarize potential advertisers with the directory. This use, argues Defendant, is insufficient to establish that it infringed upon Plaintiff's trademark.

Plaintiff asserts that Defendant ran radio advertising using PhoneGuide on numerous radio stations, including the territory covered by the SCUP directory. Plaintiff also claims that Defendant ran newspaper advertisements identifying itself as PhoneGuide in newspapers serving the SCUP area. In addition, Plaintiff claims that Defendant created press releases and promotional letters identifying itself as PhoneGuide, and Defendant's Marquette office displayed PhoneGuide signage.

On February 11, 2001, the Court issued an Order prohibiting Defendant's use of the trademarks. This Order also prohibited the use of prior PhoneGuide directories by Defendant during sales presentations unless the PhoneGuide logo and all internal references to PhoneGuide were blocked out.

## LEGAL STANDARDS FOR RULE 56

In reviewing a motion for summary judgment, this Court will only consider the threshold question of whether there are "genuine issues as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). A motion for summary judgment requires that the Court view the " 'inferences to be drawn from the underlying facts ... in the light most favorable to the party opposing the motion.' " *Matsushita Electric Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)). The opponent, however, has the burden of showing that a "rational trier of fact [could] find for the non-moving party [or] that there is a 'genuine issue for trial.' " *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348. "The mere existence of a scintilla of evidence in support of plaintiff's position[, however,] will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## ANALYSIS

### A. Fair Use Doctrine

■ Trademark law is governed by the Lanham Act, which provides a fair use defense for accused infringers. According to the Act, a defense exists where the use of a name charged to be an infringement is "descriptive of and used fairly and in good faith only to describe the goods ...." 15 U.S.C. § 1115(b)(4). Thus, the use of a trademark in a non-trademark sense, where the trademark is used fairly and accurately as a way to identify an individual working for a company or the nature of the goods or services being offered are not prohibited by the Lanham Act. *See Bus. Trends Analysts, Inc. v. Freedonia Group, Inc.*, 700 F.Supp. 1213, 1233–34 (S.D.N.Y. 1988) (citations omitted); *see also BIEC Int'l, Inc. v. Global Steel Servs., Ltd.*, 791 F.Supp. 489, 535 (E.D.Pa.1992).

■ To succeed in a fair use defense, Defendant must show its use of the trademark was (1) not as a trademark, (2) fair and in good faith, and (3) used "only to describe" its goods or services. *See Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 951 (7th Cir.1992). Defendant must also show that its use is not likely to cause confusion as to the source of the goods or services. *See, e.g. Transgo, Inc. v. Ajac Transmission Parts Corp.*, 911 F.2d 363, 366, n. 2 (9th Cir.1990).

## B. Defendant's Argument

Defendant argues that its use of the PhoneGuide trademark was a fair use. Defendant claims it did not use the PhoneGuide trademark as a trademark, nor did its use cause confusion as to the source of the PhoneGuide trademark.

In reliance, Defendant cites to *Champion Spark Plug Co. v. Sanders*, 331 U.S. 125, 67 S.Ct. 1136, 91 L.Ed. 1386 (1947). In *Champion*, the Supreme Court allowed a defendant to sell refurbished spark plugs without removing the name of the original manufacturer, even if it gave the defendant a competitive edge, as long as the defendant disclosed that the spark plugs were refurbished. *Champion*, 331 U.S. at 130, 67 S.Ct. 1136; *see also Prestonettes v. Coty*, 264 U.S. 359, 368, 44 S.Ct. 350, 68 L.Ed. 731 (1924) ("When the mark is used in a way that does not deceive the public we see no such sanctity in the word as to prevent its being used to tell the truth. It is not taboo."); *McDonald's Corp. v. Burger King Corp.*, 107 F.Supp.2d 787, 791 (E.D.Mich.2000) (defendant's use of "Big Kids Meal" to describe its meal with larger portions was fair use and did not infringe upon plaintiff's "Kids Meal" mark).

Defendant also cites to a Ninth Circuit case wherein the Ninth Circuit held that a manufacturer can use another's trademark to advertise that its product is a duplicate of the trademark owner's product, as long as the advertisement does not contain misrepresentations or cause confusion as to source or sponsorship. *See Smith v. Chanel, Inc.*, 402 F.2d 562, 564 (9th Cir.1968). Likewise, the Third Circuit has stated that whether a reference to a competitor's trademark infringes upon that trademark depends on whether the reference is truthful. *See G.D. Searle & Co. v. Hudson Pharm. Corp.*, 715 F.2d 837, 841 (3d Cir. 1983) (quotations omitted).

Based on these cases, Defendant argues that its use of the PhoneGuide trademark, i.e. its sales representatives carrying the 1999 SCUP directory to sales calls for advertisements in the 2000 SCUP directory, constitutes a fair use. Defendant argues it was using the trademark to show advertisers what their current advertisement contained and to give advertisers some indication of how an advertisement would appear in the 2000 directory. Furthermore, Defendant argues, its use did not cause confusion regarding the source of the goods, and as a result, did not infringe upon Plaintiff's trademark by carrying the 1999 SCUP directory on sales calls.

## C. Plaintiff's Argument

Plaintiff argues Defendant's use did infringe upon its trademark. Plaintiff asserts that Defendant "palmed off" its trademark by showing advertisers a PhoneGuide directory but not renewing advertisements in a PhoneGuide directory. Plaintiff also asserts that Defendant pulled a "bait and switch" when they showed the PhoneGuide directory to potential customers who had never advertised in a PhoneGuide directory and then sold these same customers advertisements in Defendant's directory, which is not a PhoneGuide product. Furthermore, Plaintiff argues, Defendant did not inform advertisers that PhoneGuide would not be on the directory cover or that Defendant was not affiliated with PhoneGuide. In addition, Plaintiff objects to Defendant's practice of carrying various PhoneGuide directories on its sales calls to cross-sell advertisements in different directories.

Plaintiff cites to *Durango Herald Inc. v. Riddle*, 719 F.Supp. 941, 947–8 (D.Col. 1988), a previous telephone directory infringement case. In *Durango*, the parties jointly published a telephone directory called "DIRECTORY PLUS." *Id.* at 944. The parties dissolved their business and

published separate directories. *Id.* Neither party was to use the "DIRECTORY PLUS" mark, but the defendant indirectly used the mark by using prior editions of the "DIRECTORY PLUS" directory during sales presentations. *Id.* The *Durango* court found this use could potentially convince the public that the defendant's product was a continuation of "DIRECTORY PLUS," and this violated the Lanham Act. *Id.* The *Durango* court also stated that it was the defendant's burden to distinguish its product from the former "DIRECTORY PLUS" directory. *Id.*

### D. The Court's Findings and Conclusions

■ The Court first notes that Plaintiff is mistaken about its argument that Defendant must prove its use was a fair use. In a motion for summary judgment, the moving party may show an absence of evidence supporting the nonmoving party's case, and the moving party's burden is then discharged. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once this occurs, the nonmoving party must present evidence sufficient to establish an element essential to its case. *See Lujan v. Nat'l Wildlife Fed.,* 497 U.S. 871, 889, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). This means that the nonmoving party must present evidence that is significantly probative and not merely colorable. *See Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505. In this case, Defendant has successfully shifted the burden, and Plaintiff has not successfully presented significantly probative evidence.

For example, Plaintiff's attempt to introduce evidence of radio advertising by Defendant utilizing the trademark falls short. The radio advertising in questions did not occur in the SCUP market. In addition, Plaintiff does not present evidence that Defendant circulated a newspaper advertisement in the SCUP market. In fact, the advertisement in question addresses Defendant's purchase of publishing rights to J–Mar's Cheboygan/St. Ignace Phone-Guide. Furthermore, Plaintiff fails to assert that any press releases or promotional materials were used within the SCUP market or given to any SCUP customers. The letters attached to Plaintiff's Brief in Opposition to this Motion do not mention the SCUP market. Plaintiff's argument regarding the signage in Marquette is similarly insignificant considering Marquette is not in the SCUP area. Such merely colorable evidence is not enough to defeat Defendant's Motion.

Moreover, affidavits from Defendant's employees support Defendant's argument that it carried prior year directories to show customers what their advertisement might look like and to allow advertisers to determine whether they wished to make changes to their advertisements. Plaintiff's speculations regarding Defendant's sales representative's activities on sales calls does not sufficiently rebut these affidavits.

At first glance, the *Durango* case cited by Plaintiff seems strikingly similar to the case at bar. A more thorough review of the *Durango* case, however, shows that *Durango* is different from this case in many important aspects. For example, the *Durango* court rejected plaintiff's request for an accounting of the use of the trademark, *Durango,* 719 F.Supp. at 944, and an accounting is the relief Plaintiff has requested regarding the SCUP market. The *Durango* court also stated that no action existed where the defendant's use occurred in an area not served by the trademark owner. *Id.* at 948, n. 5. In this case, Plaintiff does not serve the SCUP market, and the evidence does not support a finding of confusion in that market. In *Durango,* the plaintiff based its infringement claim on the defendant's use of the trademark during sales calls within the

area served by the trademark owner. *Id.* at 947–8. Here, Plaintiff does not serve the SCUP market.

## CONCLUSION

In short, Plaintiff does not present significant evidence to support its claims. All of the evidence Plaintiff presents is rebutted by significant evidence. For these reasons and the reasons discussed above, the Court grants Defendant's Motion for Partial Summary Judgment. An Order consistent with this Opinion is forthcoming.

### *ORDER*

In accordance with the Opinion entered this day;

**IT IS HEREBY ORDERED** that Defendant's Motion for Partial Summary Judgment with Regard to McLeodUSA's Use of Prior Years' Directories (Dkt. No. 123) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's infringement claims found in Counts I, II, III, IV, and VII regarding Defendant's use of prior years' directories in the South Central Upper Peninsula market are **DISMISSED**.